298

C. Miller Chevrolet, Inc., Appellant, v. City of Willoughby Hills, Appellee.

(No. 73-852—Decided June 26, 1974.)

Messrs. *Donaldson, Colgrove, Cardinal & Freed* and Mr. *Richard O. Colgrove,* for appellant.

Messrs. *Baker, Byron & Hackenberg* and Mr. *Barry M. Byron,* for appellee.

O'NEILL, C. J. The Court of Appeals, in reversing the judgment of the Court of Common Pleas, stated two reasons for its judgment. First, it held that appellant was an improper party to seek the variance, and, therefore, an improper party to appeal the denial thereof to the Board of Zoning and Building Appeals, and from there to the courts. Second, the Court of Appeals held that appellant failed to present evidence sufficient to overcome the presumption of validity that attached to the existing zoning. These reasons given by the Court of Appeals frame the issues presented to this court.

## I.

The question of appellant's capacity to apply for and appeal from the denial of a zoning variance was raised for the first time by the Court of Appeals. Capacity was not an issue before either the city's zoning inspector, the Board of Zoning and Building Appeals, or the Court of Common Pleas. Subsequent to oral argument conducted before the Court of Appeals, that court ordered both parties to file additional briefs on "the question of whether an optionee, in this case C. Miller Chevrolet, Inc., can prosecute an appeal of the refusal by a building inspector to grant a building permit." In its additional brief, the appellee cited Section 1603.05 of its Regional Building Code, which requires that "an application for a permit shall be obtained at the office of the building official signed

by the owner or his authorized agent." The Court of Appeals seized upon this provision to hold that since the permit application itself did not indicate that it was signed by either the owner (Quiggin) or his authorized agent, "C. Miller Chevrolet was an improper party to apply for a building permit and therefore an improper party to appeal to the Board of Zoning and Building Appeals and the Common Pleas Court." Upon the basis of the record before the Court of Appeals, this conclusion can not stand.

In reviewing the judgment of a lower court, a Court of Appeals is guided by App. R. 12(A), which provides that the Court of Appeals need only pass upon errors assigned and briefed; errors not specifically pointed out in the record and separately argued by brief may be disregarded. Nevertheless, nothing prevents a Court of Appeals from passing upon an error which was neither briefed nor pointed out by a party.[3] However, as this court recently pointed out in *Paulin* v. *Midland Mutl. Life Ins. Co.* (1974), 37 Ohio St. 2d 109, 307 N. E. 2d 908, factual conclusions reached by a Court of Appeals must be based upon evidence in the record.

The decision of the Court of Appeals upon the issue of whether appellant was a proper party was premised upon the conclusion that the application involved in this case was one for a building permit. The record clearly disputes this finding, and discloses that the application was for a zoning variance. Since it is not clear whether Section 1603.-05 of Willoughby Hills' Regional Building Code governs a request for a zoning variance, the Court of Appeals erred in utilizing that provision to hold appellant was an improper party in this case.

## II.

The substantive issue to be decided in this case has been set forth, in general terms, in the syllabus of *Mobil*

---

[3] In fairness to the parties, a Court of Appeals which contemplates a decision upon an issue not briefed should, as the Court of Appeals in this case did, give the parties notice of its intention and an opportunity to brief the issue.

*Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23, 309 N. E. 2d 900:

"In an appeal, pursuant to R. C. Chapter 2506, which challenges the constitutionality of a zoning ordinance as applied, the issue for determination is whether the ordinance, in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of police power by the municipality."

Since the Willoughby Hills Board of Zoning and Building Appeals had authority to grant a use variance, the specific question for determination in this appeal is whether the board's denial of the variance request, which prohibited appellant's proposed use of the property, had any reasonable relationship to the exercise of the police power possessed by the city. The board is a public body, and therefore its decision on the application for a variance must be accorded a presumption of validity; the burden of showing that the decision is erroneous rests on the party contesting the decision. *McCauley* v. *Ash* (1954), 97 Ohio App. 208, 124 N. E. 2d 739; 8A McQuillin, Municipal Corporations (3 Ed.), 424, Section 25.327; 168 A. L. R. 13, 146.

The major thrust of appellant's evidence before the trial court concerned the increase in value that would accrue to the subject property if it could be put to a commercial use. Appellant's expert appraisal witness testified that the value of the property under the existing zoning (single-family residential) was $2,500 an acre, but if a commercial use were permitted the value would be $50,000 an acre. This increase in value is verified by the fact that the option contract between appellant and Quiggin specified a selling price of $50,000 an acre. Obviously, appellant would exercise the option only if a commercial use were allowed.

Evidence that the removal of a zoning restriction would result in an increase in the value of the affected land is relevant when the validity of a denial of a zoning variance is challenged, but as a general rule such evidence does not, of itself, render the board's denial unreasonable,

arbitrary, capricious or unconstitutional. See *Curtiss* v. *Cleveland* (1957), 166 Ohio St. 509, 144 N. E. 2d 177; *State, ex rel. Jack,* v. *Russell* (1954), 162 Ohio St. 281, 123 N. E. 2d 261; 8 McQuillin, Municipal Corporations (3 Ed.), 107, Section 25.44. In each case, there must be a balancing of interests between the benefits that would flow to the owner of the property if his proposed use were allowed and the benefits to the public health, safety, welfare and morals that are derived from the existing zoning. *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127, 163 N. E. 2d 682.

Since the orderly development of an area is a legitimate goal of zoning regulations, appellant's evidence concerning increased land value must be weighed against the expert evidence introduced by appellee regarding its proposed long-range development plan for the area in which the subject property is located. Sometime in the early 1970's, Willoughby Hills retained a city planning firm to develop a comprehensive master plan for the development of the entire city. This firm was specifically requested to study one of the major regions of anticipated development, the Bishop-Chardon area. The property which is the focal point of this litigation is located within this area. A document entitled "Bishop Chardon Study" was produced and submitted to appellee's planning commission. The study indicated that the property in question in this case should be rezoned to allow either commercial or office uses. On December 30, 1971, the planning commission adopted a proposed comprehensive master plan.[4] In this plan, the commission stated:

---

[4]Although appellee, in its brief before this court, asserts that the Willoughby Hills city council has approved this recommended master plan, the record does not disclose this. However, the plan was issued by the planning commission on December 30, 1971, and the trial in this case was conducted only three and one-half months later; it is quite possible that council had not yet acted on the recommendation at the time of the trial. This possibility is strengthened by the fact that appellant has not, at any point in this litigation, suggested that the proposed plan was rejected by council. Therefore, this court considers the proposed master plan as relevant evidence in determining this case.

"* * * Based upon a thorough review of the remaining undeveloped land in the area and the alternative feasible uses within this area presented in * * * 'The Bishop-Chardon Study,' the commission recommends that * * * the land along the east side of Bishop Road north of Chardon Road be developed for regionally oriented offices."

Appellant presented no evidence to indicate that the planning commission's recommendation, quoted above, was unreasonable. Appellant did succeed in getting an admission from a member of the planning firm retained by the city that commercial use would also have been appropriate for the area in question. However, this merely indicates that the commission was faced with a choice in making a recommendation for the future development of the area.

Allowing appellant's proposed use—a new car agency —not only would be incompatible with the recommended master plan,[5] but could also have the effect of preventing the implementation of the plan in the surrounding area. A planning consultant testified that because of the location and size of the property on which appellant proposed to establish the dealership, granting appellant permission to proceed could preclude the city from developing the adjacent area as an office district. Appellant did not dispute this testimony.

Upon the basis of the record, it is the opinion of this court that appellant failed to establish either that the zoning ordinance as applied does not bear "a reasonable relationship to the legitimate exercise of police power," or that the action of the zoning board denying the variance request is so "arbitrary, confiscatory or unreasonable * * * as to be in violation of constitutional guarantees." *Willott*

---

[5]Although the planning commission recommended, on April 1, 1971, that council approve an ordinance rezoning the subject property "commercial," this action took place three and one-half months before the "Bishop Chardon Study" was submitted to the commission, and nine months prior to the issuance of the proposed master plan. There is testimony in the record that one of the reasons the commission wanted a specific study made of the Bishop-Chardon area was to evaluate the impact on the entire area of appellant's proposed use.

v. *Beachwood* (1964), 175 Ohio St. 557, 560, 197 N. E. 2d 201.

Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

P. BROWN, J., concurs in paragraph one of the syllabus and in the judgment.