BP OIL COMPANY et al., Appellants,

v.

CITY OF DAYTON BOARD OF ZONING APPEALS et al., Appellees.

[Cite as *BP Oil Co. v. Dayton Bd. of Zoning Appeals* (1996), 109 Ohio App.3d 423.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. CA 15366.

Decided Feb. 16, 1996.

424

*Strauss & Troy, Leon L. Wolf* and *Charles C. Ashdown,* for appellants.

*J. Anthony Sawyer,* Dayton Director of Law, and *Steven R. Milby,* Senior City Attorney, for appellees.

FREDERICK N. YOUNG, Judge.

This is an appeal from a decision issued by the Dayton Board of Zoning Appeals ("BZA") granting BP Oil Company's conditional use permit. The land subject to the permit is a BP-owned automobile service station and convenience store, located at 500 Salem Avenue. This land is situated in a B–2 Community Business District.

## I

In August 1993, BP applied to the zoning administrator for an occupancy certificate to add to and remodel the service station and convenience store.[1] On August 19, 1993, the zoning administrator issued a formal decision, denying the certificate on the following grounds:

"§ 150.183(E) The subject use, automobile service station, is a conditional use in the B–2 Zoning District.

§ 150.11 The proposed alteration requires an approval from the Board of Zoning Appeals."

Thereafter, BP applied to the BZA for a conditional use permit to expand and remodel the service station and convenience store. On October 26, 1993, the BZA conducted its first hearing on BP's conditional use application. At the hearing, various witnesses testified that the BP station had problems with loitering, security, and other breaches of the peace. There was also evidence presented that, as far back as 1991, BP had met with the police department, community group representatives, and the zoning planning development staff to discuss problems of loitering and individuals engaging in disorderly conduct on the BP premises. At the close of the meeting, the BZA determined that the matter needed further attention and scheduled another meeting on November 16, 1993.

At the November 16th meeting, several witnesses again expressed their concern about crime and loitering surrounding the BP station. Furthermore, some witnesses thought that selling food from the station would encourage such activities. Based upon the testimony and evidence presented at the two hearings, the BZA issued a finding of fact in which it stated:

"This site has been used as a service station for many years. The design of the site and area itself has attracted negative elements in the past, such as loitering

---

1. BP claims that it has conducted convenience food sales from that property for over twenty years. However, the city asserts that BP did so illegally because BP never requested or received a certificate of occupancy regarding convenience food sales.

in parking lot, and general disorderly behavior. The new use should, with minimal conditions, be in harmony with orderly development of the district."

The BZA concluded that the proposed use would comply with the conditional use regulations set out in Section 150.457 and could be approved if it were subject to several conditions, including the conditions that the restrooms would be available to the public during business hours (6:00 a.m. to 10:00 p.m.) and that the retail sales of nonpetroleum products would be prohibited between the hours of 10:00 p.m. and 6:00 a.m. The matter was then continued until December 7, 1993, when the BZA held another public hearing on the matter.

Immediately before the BZA's final proceedings, it received letters from the Northwest Office of Neighborhood Affairs, Dayton View Historic Association, and University Row Neighborhood Association expressing their concern about the sale of nonpetroleum and nontobacco products after 10:00 p.m. These concerns were echoed by witnesses at the December 7 meeting. In response to those concerns, BP offered to close off the entrance to the store between 10:00 p.m. and 6:00 a.m. and sell grocery items only through the pass-through window to minimize any loitering stemming from the sale of food products. BP argued that that compromise should be adopted because a complete cessation of nonpetroleum sales would be too harsh and would injure the station financially.

Based upon information from the staff report, testimony, and correspondence, the BZA issued its final decision and order containing some compromises in favor of BP. In particular, the BZA extended normal business hours of the convenience store to 11:00 p.m. and allowed tobacco products along with petroleum products to be sold after 11:00 p.m. The BZA also required that the restrooms be available to the public during business hours, which were defined as 6:00 a.m. to 11:00 p.m.

BP appealed the BZA's decision to the Montgomery County Common Pleas Court. On May 20, 1994, BP filed a motion for leave to present additional evidence. On June 13, 1994, the trial court summarily overruled BP's motion. After hearing the merits of the claim, the trial court found that the BZA's decision was not arbitrary or capricious and that it was supported by substantial, reliable, and probative evidence on the record as a whole. This timely appeal followed.

## II

## Standard of Review

Before we address the substance of BP's arguments, we must first consider our standard of review. R.C. 2506.04 sets forth the parameters of the common pleas court's reviewing function. The statute provides:

"The court may find that the order, adjudication, or decision [of an administrative agency] is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the record as a whole. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from within instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. * * * "

In an appeal of a zoning determination, the common pleas court must act under a presumption that the determination of the BZA is valid. *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400, at paragraph two of the syllabus. The burden of overcoming this presumption and showing invalidity rests upon the party opposing the determination. *Id.* The test to be applied by the common pleas court is not whether any legal justification exists, but whether the ordinance bears a reasonable relationship to the public health, safety, welfare, or morals. *Cincinnati Bell, Inc. v. Glendale* (1975), 42 Ohio St.2d 368, 370, 71 O.O.2d 331, 332–333, 328 N.E.2d 808, 809.

██ The decision of the common pleas court is appealable to the courts of appeal on questions of law. R.C. 2506.04. However, an appeals court's standard of review is more limited than that of the common pleas court. *Rotellini v. W. Carrollton Bd. of Zoning Appeals* (1989), 64 Ohio App.3d 17, 20, 580 N.E.2d 500, 502. Our standard of review is whether, as a matter of law, the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29–30, 465 N.E.2d 848, 851–852. This standard, on its face, seems to be the same standard used in the trial court, but as the court in *Kisil, supra,* elaborated:

"This statute [R.C. 2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be *abuse of discretion* by the common pleas court." (Emphasis added.) *Id.*

With this standard of review in mind, we will begin addressing BP's assignments of error.

### III

### Assignments of Error

BP presents three assignments of error for this court to review. In its first assignment of error, BP asserts:

"The trial court erred by affirming the BZA's imposition of conditions beyond the scope of the BZA's authority."

BP argues that the BZA exceeded its authority because the conditions were placed upon a permitted use, the sale of convenience food items. Furthermore, BP argues that the hour restrictions impermissibly constitute a prohibition by the BZA on the sale of beer during the restricted hours. Finally, BP claims that the BZA overreached its authority because it placed a condition upon the availability of the restrooms, the regulation of which is within the exclusive province of the Department of Buildings.

## A

### Convenience Sales

■ Both parties in the present case agree that convenience food sales are a permitted use in the B–2 District under the Dayton Revised General Ordinances. The ordinance does not specifically state that convenience food sales are a permitted use, but it does provide that the following retail sales are permissible: candy, confectionery, cigars, cigarettes, tobacco, dairy products, grocery, meat, fish, magazines, pet supplies, newspapers, and drugs. Conversely, gas stations are explicitly listed in Section 150.183 as a conditional use in the B–2 District. Section 150.183 provides that a gas station may be allowed "only after having complied with the requirements and approval procedures specified in §§ 150.453 to 150.460, inclusive of this chapter."

The city claims that the BZA had the authority to place the conditions on the sale of food pursuant to Section 150.458 of those conditional use compliance requirements. Section 150.458 provides:

"In granting a conditional use, the Board may impose such conditions, safeguards, and restrictions *upon the premises* benefitted by the conditional use as may be necessary to comply with the standards set out in § 150.457, and to reduce or minimize any potentially injurious effect of such conditional uses upon other property in the neighborhood and to carry out the general purpose and intent of this chapter." (Emphasis added.)

The city asserts that the broad language "upon the premises" used in that section gives the BZA the authority to place conditions upon the premises regardless of whether the condition directly affects a permitted use.

The city also maintains that the types of conditions it placed upon the BP premises were within the scope of its authority. Sections 150.458 and 150.457 outline the scope of the BZA's authority to place conditions upon the premises. Those sections provide that the board may impose conditions as may be necessary to ensure that "[t]he proposed conditional use will not cause substantial

injury to the value of other property in the neighborhood in which it is located and will contribute to and promote the convenience and welfare of the public" and to "reduce or minimize any potentially injurious effect of such conditional uses upon other property in the neighborhood and to carry out the general purpose and intent of this chapter."

The city claims that the BZA's conditions were within the scope of its authority because the conditional use gas station had problems with loitering and disorderly conduct. The city maintains that the sale of food and other nontobacco products after 11:00 p.m. would encourage the loitering and other breaches of the peace on the gas station premises. The hour restrictions, the city claims, were within the scope of the BZA's authority because the restrictions promote the public welfare by making the area less conducive to loitering and reduce the injurious effects of loitering and crime that occur on the premises of the conditional use.

Conversely, BP asserts that the BZA's authority under Section 150.458 is limited to the placement of conditions on the conditional use itself. BP supports this argument by pointing to language in Sections 150.458 and 150.457 which provides that conditions may be placed upon on the premises benefited by the conditional use "as may be necessary * * * to reduce or minimize any potentially injurious effect *of such conditional uses*" and so that "the proposed *conditional use* will not cause substantial injury." (Emphasis added.) BP· further argues that this reading of these sections is necessary because otherwise the BZA would be able to expand its authority and place conditions on permitted uses, which are unconditionally allowed.

■■■ Our resolution of this issue turns upon the meaning of Section 150.458. Where an ordinance is plain and unambiguous and conveys a clear and definite meaning, a court is to apply only that interpretation. *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213–214, 404 N.E.2d 159, 161–162. In that case, there is no need to apply the rules of construction. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77, 79–80. However, where the language of an ordinance is ambiguous a court may resort to the rules of construction to resolve the ambiguity. *Id.* An ordinance is ambiguous when it is subject to various interpretations. *Id.* Specifically, an ambiguity exists if a reasonable person can find different meanings in the ordinance and if good arguments can be made for either of two contrary positions. *Id.;* see, also, *Laskaris v. Wisconsin Dells, Inc.* (1986), 131 Wis.2d 525, 530–532, 389 N.W.2d 67, 70; *Atlas Ready–Mix of Minot, Inc. v. White Properties, Inc.*, N.D. (1981), 306 N.W.2d 212.

■ After reviewing Section 150.458, we find that it is ambiguous. The ambiguity becomes apparent when one considers the meaning of the term "permitted use." The Dayton ordinance does not define the phrase "permitted use"; however, the words "permitted use" have generally been defined in case law as "only those uses allowed absolutely or unconditionally." *Kopelman v. Zoning Hearing Bd.* (1980), 55 Pa.Commw. 306, 423 A.2d 761; *Keiners Lane v. Robinson Twp.* (1988), 121 Pa.Commw. 346, 550 A.2d 863; *Kossman v. Zoning Hearing Bd.* (1991), 143 Pa.Commw. 107, 597 A.2d 1274. [2] Zoning boards usually do not have the authority to place conditions on a permitted use, because the legislature already determined that the use is not detrimental to the health, safety, or welfare when it passed the ordinance. *Laird v. McKeesport* (1985), 88 Pa.Commw. 147, 151–153, 489 A.2d 942, 944; *Oakwood v. Clark Oil & Refining Corp.* (1986), 33 Ohio App.3d 180, 515 N.E.2d 1 (Administrative bodies cannot impose conditions on a permitted use which are not present in the zoning code itself.).

*Keiners Lane v. Robinson Twp.* (1988), 121 Pa.Commw. 346, 550 A.2d 863, dealt with placing conditions directly upon a permitted use. In *Keiners,* the plaintiff contested conditions placed on its building, which was used for storage and repair of garbage trucks. This use was a permitted use in the relevant zoning district. The zoning board allowed this use, but only with the conditions that the trucks had to be thoroughly washed prior to entering the premises and that all dumpsters and containers had to be stored inside the building. The court found that permitted uses are uses allowed unconditionally. Nonetheless, the court held that the board had not imposed any restrictions greater than those imposed by the ordinance itself. The ordinance specifically provided that the permitted use had to be conducted entirely within an enclosed building, that open area around the building could not be used for storage, and that the use could not be noxious or offensive by reason of fumes, gas, or odors.

The New York Supreme Court dealt with the issue of placing conditions on a permitted use in *Hubshman v. Henne* (1973), 42 A.D.2d 732, 345 N.Y.S.2d 669. Although *Hubshman* dealt with a variance and not a conditional use, we think its holding is applicable here. In *Hubshman* the property owner was conditionally granted a variance to build a tennis court and fence. The conditions prohibited any lighting on the courts and restricted play on the courts before and after certain hours.

---

2. It is important for us to note here that conditions may be placed on permitted uses in zoning ordinances. However, the BZA does not have the authority to place conditions on permitted uses which are not clearly in the ordinance. Allowing the BZA to place conditions on a permitted use without authority from the ordinance would, in effect, give the BZA the authority to legislate.

The New York Supreme Court struck down the conditions, holding that the conditions were impermissible attempts to regulate the details of permitted uses. The court found that the property lighting and the hours of use were permitted unconditionally under the ordinance. The court concluded that the BZA could not impose conditions on permitted uses merely because they accompanied a variance use.

Given that permitted uses are generally unconditionally allowed, we find Section 150.458 susceptible of two reasonable interpretations. Section 150.458 could reasonably be read to create a blanket authorization to place conditions "upon the premises" regardless of whether the condition is placed upon a permitted use. Or Section 150.458 could be reasonably read to mean that the BZA is authorized to place conditions only on the conditional use of the premises.

Ohio law is clear that in interpreting a zoning ordinance courts must strictly construe restrictions on the use of real property in favor of the property owner. *Liberty Sav. Bank v. Kettering* (1995), 101 Ohio App.3d 446, 655 N.E.2d 1322; *Rotellini v. W. Carrollton Bd. of Zoning Appeals* (1989), 64 Ohio App.3d 17, 580 N.E.2d 500; *State ex rel. Moore Oil Co. v. Dauben* (1919), 99 Ohio St. 406, 124 N.E. 232; *Whiteco Metrocom, Inc. v. Columbus* (1994), 94 Ohio App.3d 185, 640 N.E.2d 563.

"All zoning decisions, whether on an administrative or judicial level, should be based on the following elementary principles which underlie real property law. Zoning restrictions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. Restrictions on the use of real property by the ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed." (Citations omitted.) *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 246, 421 N.E.2d 152, 154.

Ambiguities in zoning provisions which restrict the use of one's land must be construed against the zoning resolution because the enforcement of such provisions is an exercise police power that constricts property rights. *Freedom Twp. Bd. of Zoning Appeals v. Portage Cty. Bd. of Mental Retardation & Developmental Disabilities* (1984), 16 Ohio App.3d 387, 390, 16 OBR 456, 458–459, 476 N.E.2d 360, 363–364. Furthermore, the BZA's authority to regulate uses of land cannot be extended to include the authority to restrict uses not clearly proscribed in the ordinance. *Dauben, supra.* Since Section 150.458 allows the BZA to place restrictions on the use of BP's land, we are required to strictly interpret that section in favor of BP.

Interpreting the ambiguity in favor of BP, we find that the BZA is authorized under Section 150.458 to place conditions only upon the conditional use of the premises. However, we limit our holding to the facts of this case. We hold only that when a property has two primary uses, one permitted and one conditional, the BZA may not, without authority in the ordinance, place a condition on the permitted use of the property merely because it exists in conjunction with a conditional use.

In so holding, we are mindful of the problems occurring on the BP premises. The transcripts reveal that BP and its staff have not adequately kept people from loitering on the BP premises. The following excerpt is representative of the testimony on BP's problem with loitering: "There is someone there constantly asking us for a quarter to fill our tanks, asking us for fifteen cents to get on the bus, asking us for two dollars worth of gas." The transcripts also contain testimony from several community leaders expressing their concern over drug deals and other crimes occurring on the BP premises. Finally, there was evidence in the transcripts that the police have been called to the BP station four hundred seventy-one times in one year.

Consequently, we remand this action to the trial court with instructions to remand the action to the BZA. We do so to allow the BZA to place appropriate conditions on the BP premises to deal with this problem.[3] This court may remand this action to the BZA pursuant to its authority in R.C. 2506.04, which governs the court's review of administrative decisions. Under that section, a court may, "[c]onsistent with its findings, * * * remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision, consistent with the findings or opinion of the court." R.C. 2506.04.

In placing the new conditions, the BZA may not directly burden the permitted use, the convenience store. However, the condition may indirectly affect the permitted use because any condition placed on a conditional use that exists in conjunction with a permitted use would likely incidentally or indirectly affect the permitted use. Some examples of conditions which may be permissible are requiring that BP increase its security, requiring that space conducive to loitering be minimized, and requiring that lighting be increased.[4]

---

3. In remanding this action we are not requiring that the BZA hold a new hearing on this matter. Instead, we are merely giving the BZA the opportunity to place a new condition on the premises based upon the evidence submitted in the three hearings on the issue of the loitering problem. The BZA may do this simply by issuing a new order.

4. We would also like to note that this action likely arose because the Dayton Zoning Ordinance does not take into account the rather new phenomenon of gas stations with convenience stores. The legislature, in this case, the Dayton City Commission, is best suited to deal with problems that arise because an ordinance does not adequately address a new

## B

### Alcohol Sales

■ Additionally, BP claims that the hour limitation on the sale of nontobacco and nonpetroleum products constitutes a prohibition by the BZA on the sale of beer during the restricted hours. The authority to regulate the consumption of alcoholic beverages, BP asserts, is vested exclusively within the Ohio Department of Liquor Control and the Ohio Liquor Control Commission. As authority for this proposition, BP cites *Westlake v. Mascot Petroleum Co., Inc.* (1991), 61 Ohio St.3d 161, 573 N.E.2d 1068, which holds that municipality is without authority to extinguish privileges arising under a valid liquor permit through the enforcement of zoning regulations.

We find that this part of the assignment of error has been rendered moot by our decision in Part A of this opinion. Nonetheless, even if this issue has not been rendered moot, we decline to address this claim. The sale of alcohol in the BP station's zoning district is a conditional use. BP has not yet applied for that conditional use. Hence, BP is not asking this court for an adjudication of present rights, but for an advisory opinion on the basis of hypothetical facts. *Ashcroft v. Mattis* (1977), 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219; *Superior Dairy, Inc. v. Stark Cty. Milk Producers' Assn.* (1950), 89 Ohio App. 26, 45 O.O. 326, 100 N.E.2d 695. It is well settled that courts do not give advisory opinions, and we refuse to do so here. *Moskowitz v. Federman* (1943), 72 Ohio App. 149, 27 O.O. 53, 51 N.E.2d 48.

## C

### Restrooms

■ BP also contests the BZA's condition that BP make restrooms available to customers during business hours. BP claims that the issue of whether restrooms must be made available to the public is addressed in Article 18 of the Ohio Basic Building Code at Ohio Adm.Code 4101:2–28, which is enforced by the City of Dayton, Department of Economic Development, Division of Business Services, not the BZA. That section provides that "[f]acilities for customers shall not be required in stores of less than five thousand square feet." BP argues that the BZA's requirement that restrooms be made available overreaches the scope of the BZA's authority because it usurps the province of the Department of Buildings as provided in Article 18.

---

business. The problems in this case could be solved by the commission creating a separate category in the zoning ordinance for gas stations/convenience stores or by revising the zoning ordinance to specifically address dual use situations.

We decline to address this claim. A review of the BZA hearing transcripts reveals that BP told the BZA that it was going to provide public restrooms. Steve Hushebeck, the district sales manager for BP, testified that "there is [*sic*] going to be a public restrooms." Furthermore, the transcript indicates that the restrooms would be available until 10:00 p.m. Since BP testified before the BZA that it would provide public restrooms, BP cannot now complain about being required to live up to its promise. Furthermore, we find the BZA requiring BP to keep the restrooms open until 11:00 p.m., instead of 10:00 p.m., immaterial.

BP's first argument is well taken and this action is remanded to the BZA to place a condition consistent with this decision. However, BP's second and third arguments are not well taken and are overruled.

## IV

In its second assignment of error, BP claims:

"The trial court erred as a matter of law in affirming the BZA's arbitrary, capricious and unreasonable ruling that tobacco products may be sold on a 24-hour basis, but that convenience food products may not."

BP claims that the BZA's allowance of tobacco sales after 11:00 p.m., but not food, undermines the BZA's purported rationale for restricting food sales. BZA's stated rationale for imposing the hour restrictions was to discourage negative activities, such as loitering and generally disorderly conduct. BP asserts that food sales do not attract negative elements any more than tobacco sales do. Thus, BP maintains that the BZA's restriction on food sales is arbitrary and capricious and must fail as a matter of law.

Our finding on BP's first assignment of error has rendered its second assignment of error moot. Therefore, we need not address this issue.

## V

In its final assignment of error, BP asserts:

"The trial court erred by refusing to permit appellants to present additional evidence as mandated by R.C. § 2506.03."

In the common pleas court, BP moved for leave to present additional evidence. In that motion, BP alleged numerous inaccuracies and omissions in the transcript of the conditional use hearings. Furthermore, BP attached the affidavit of Steve Hushebeck, the district sales manager of BP, in which he attested that the zoning administration refusal, dated November 1, 1993, was missing from the transcript of documents. Hushebeck also attested that there were numerous inaudible sections of the hearings, causing the hearing transcripts to be incomplete and

inaccurate. Finally, he attested that he was aware that BP and the Dayton Police Department made additional comments, which were not reflected in the transcripts, regarding the availability of restrooms and the sale of food after 10:00 p.m.

BP insists that it had the right to submit additional evidence to the trial court pursuant to R.C. 2506.03, which deals with the hearing of an appeal from an administrative decision. That section provides:

"The hearing of such an appeal shall proceed as in trial of a civil action, but the court shall be confined to the transcript as filed pursuant to section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:

"(1) The transcript does not contain a report of all evidence admitted or proffered by the appellant;

" * * *

"If any of the circumstances described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party."

In an appeal of a trial court's decision denying the admission of evidence, the court's judgment cannot be disturbed unless the complaining parties demonstrate a reasonable likelihood that the outcome of the trial would have been different had they been permitted to introduce the additional evidence. *Franklin Twp. v. Marble Cliff* (1982), 4 Ohio App.3d 213, 216, 4 OBR 318, 322, 447 N.E.2d 765, 768.

We find that BP has failed to meet that burden. BP merely makes a bald-faced assertion that the outcome of the trial would have been different. Even so, we have reviewed the transcripts and found that the gaps are not so extensive that the gist of the arguments and testimony cannot be ascertained. *Id.* (holding that evidence need not be admitted where gaps in transcripts are not so extensive that the gist of the testimony cannot be ascertained). Furthermore, we cannot find that the trial court committed reversible error in not admitting the other documents because, although we found that Section 150.458 ambiguous, there was ample evidence supporting the BZA findings and it is unlikely that the additional factual evidence would have swayed the trial court to overrule the BZA order. This assignment of error is overruled.

Based upon the foregoing reasons, the decision of the trial court is reversed and remanded on the first assignment of error and affirmed on the second and third assignments of error.

*Judgment affirmed in part*
*and remanded in part.*

BROGAN and FAIN, JJ., concur.