O P I N I O N
The Board of Zoning Appeals of the City of Moraine ("the BZA") appeals from a judgment of the Montgomery County Court of Common Pleas, which reversed the BZA's decision to deny John P. Raisch, Inc. ("Raisch") a temporary use permit and ordered the BZA to issue a temporary use permit for a period of three years subject to certain restrictions.
The facts are essentially undisputed and are set forth in some detail in the trial court's decision. In the interest of judicial economy, we essentially adopt the trial court's statement of the facts, as follows:
Raisch purchased the subject property, known as Lot 4888 and located on Hemple Road, in 1974. In December 1974, the Combined Health District of Montgomery County, Ohio ("the Combined Health District") received a letter from Raisch describing the activity on the property as excavation and hardfill activities. Essentially, the property was used as a demolition disposal site and to excavate gravel for use as fill at demolition sites. Demolition disposal is governed by the Combined Health District, the Ohio Department of Natural Resources, the Ohio Environmental Protection Agency, and local authorities. In December 1975, the Combined Health District approved the activities on the subject property. On March 1, 1978, the Ohio Department of Natural Resources Surface Mine Permit No. 539 was issued to Raisch for a ten year period for the subject property.
Raisch operated an excavation and hardfill site on the property until 1990. Despite possessing the required permits and licenses, Raisch was informed by the Jefferson Township Zoning Inspector that the property was not zoned for use as a hardfill site. The property was zoned agricultural and the Jefferson Township Zoning Code did not permit hardfill sites to be located in agricultural zones.
Having received the aforementioned notification from the Jefferson Township Zoning Inspector, Raisch filed an application requesting a conditional use permit that would allow the property to be used as a demolition disposal site. Raisch also sought permission to engage in gravel excavation on the subject property. The Jefferson Township Board of Zoning Appeals denied Raisch's request. Raisch appealed the Jefferson Township Board of Zoning Appeals' decision to the Montgomery County Court of Common Pleas; however, the appeal was dismissed as moot as a result of the property's annexation to the City of Moraine.
Shortly after the annexation, the Moraine Building and Zoning Department issued a violation warning letter and citations for zoning violations to Raisch. Raisch subsequently sought from the BZA a variance and, in the alternative, a temporary use permit for a demolition disposal site in the agricultural (A-I) zoning district. On March 1, 1993, the BZA granted Raisch a temporary use permit until such time as the Moraine Comprehensive Zoning Plan was adopted by the Moraine City Council. The temporary use permit allowed Raisch to continue operating the subject property as a demolition disposal site. On March 10, 1993, the Combined Health District issued a Demolition Disposal Facility Permit for the subject property.
The City of Moraine adopted a Comprehensive Zoning Plan on May 11, 1995. Pursuant to this plan, the subject property remained classified as an agricultural zoning district in which demolition disposal sites were prohibited. The Moraine Building and Zoning Department subsequently issued a stop work order to Raisch. The stop work order was rescinded when Raisch requested a copy of the Moraine Comprehensive Zoning Plan and copies were not available. On June 25, 1997, the Moraine Building and Zoning Department made copies of the Comprehensive Zoning Plan available to Raisch and reissued the stop work order.
On September 2, 1997, Raisch filed a second application for a temporary use permit with the BZA to use the property at issue as a demolition disposal site. Raisch sought a twenty-five year permit but made it clear that it was willing to accept any rules or regulations as to the operation of the site or length of time or renewability of the permit. A public hearing on the application was held before the BZA on October 6, 1997.
At the public hearing, Raisch suggested that the topography and foundation of the subject property was not suitable for any other practical use. Raisch also put forth a hardship argument. Raisch explained that it is a demolition company and as such, uses the subject property as a demolition disposal site. Raisch contended that if it were not permitted to utilize this property as a demolition disposal site, it would have to bid against other demolition companies that operate their own disposal sites, and that it would not be able to make competitive bids in such a situation.
At the public hearing, Raisch provided testimony that indicated that it had at all times complied with local and state licensure and permit requirements governing demolition disposal sites or hardfills. Mark Case testified on Raisch's behalf at the public hearing. Case was employed with the Combined Health District Bureau of Special Services, which operates a solid waste regulatory oversight inspection program and has jurisdiction over Raisch's demolition disposal site. Case explained that Raisch's demolition disposal site was subject to regular unannounced inspections and that there had never been a need for concentrated enforcement actions against Raisch.
Having administered a "mass public oath" before the public hearing, the BZA heard testimony from residents who lived near the subject property. Each resident who offered testimony, save one, spoke in opposition to Raisch's temporary use permit application. Furthermore, the BZA allowed unsworn letters in opposition to Raisch's permit application to be read into the record.
Residents opposing Raisch's temporary use permit application complained about target shooting that had taken place on the property. Residents were also concerned with the noise that originates from Raisch's property. There were complaints as to the amount of heavy truck traffic on the local roads and complaints about the trucks speeding. One resident testified that he had trespassed onto Raisch's property and taken pictures of material that would not be permitted at a demolition disposal site. Another resident, who records music and television shows at her home, contended that she never would have bought her property seven years ago had she known that there was a demolition disposal site nearby. This resident testified that she carefully studied the area six or seven years ago before buying the property she now owns and, despite her careful study, was unable to learn about the presence of Raisch's demolition disposal site that had been operating for well over twenty years. This same resident complained that she had recently had problems with bacteria in her well. She attributed this bacteria problem to Raisch's demolition disposal site, which she continued to mistakenly refer to as a landfill. Raisch countered this allegation by offering testimony of its engineer that Raisch had consulted water tables to make sure that none of the local residents' wells were at risk of any contamination. Furthermore, the aforesaid water tables indicated that the complaining resident's property and well were located above Raisch's property; therefore, it would be impossible for there to be any causal relationship between Raisch's operation of a demolition disposal site and a bacteria problem in her well.
Once the testimony had concluded, the BZA voted unanimously to deny Raisch's temporary use permit application based on its findings that: (1) twenty-five years was not temporary; (2) denial of the permit would not result in a major hardship for Raisch; (3) concerns of the area residents were important; and (4) Raisch's use of the subject property as a demolition disposal site was not conducive to the Comprehensive Zoning Plan of the City of Moraine.
Raisch appealed the BZA's decision to the Montgomery County Court of Common Pleas in January 1998. Upon Raisch's motion, the trial court stayed enforcement of the zoning laws and permitted Raisch to continue his business operations while the appeal was pending. On November 10, 1998, the trial court reversed the decision of the BZA and ordered it to issue a temporary use permit for a period of three years, subject to several restrictions.
The BZA appealed, raising two assignments of error.
 I. TRIAL COURT ERRED IN REVERSING THE DECISION OF THE APPELLANT TO DENY APPELLEE'S REQUEST FOR A TEMPORARY USE PERMIT WHERE THE ADMINISTRATIVE RECORD ESTABLISHED THAT APPELLEE FAILED TO SHOW UNNECESSARY HARDSHIP ARISING FROM THE EXISTING ZONING OF APPELLEE'S PROPERTY.
The BZA claims that the trial court erred in reversing its decision and granting the temporary use permit because Raisch had failed to show any unnecessary hardship and because any hardship demonstrated by Raisch had resulted from its own disregard for the zoning ordinances.
Moraine Codified Ordinance 1183.03 governs temporary use permits and provides that the BZA "may authorize the temporary use of a building or premises in any district for a purpose or use that does not conform to the [zoning code regulations] for the district in which it is located; provided that such use be of a temporary nature * * *." An applicant may appeal the decision of the BZA to the court of common pleas pursuant to R.C. Chapter 2506. In such an appeal, the decision of the BZA is presumed to be valid, and the burden is on the applicant to demonstrate that the decision was invalid. BP Oil Co. v. Dayton Bd. of ZoningAppeals (1996), 109 Ohio App.3d 423, 428, citing C. MillerChevrolet, Inc. v. Willoughby Hills (1974), 38 Ohio St.2d 298.
When considering an administrative appeal, a court of common pleas must weigh the evidence in the record to ascertain whether there exists a preponderance of reliable, probative, and substantial evidence to support the administrative agency's decision. Dudukovich v. Lorain Metro. Housing Auth. (1979),58 Ohio St.2d 202, 207. The court of common pleas, however, may not blatantly substitute its judgment for that of the agency. Id. R.C.2506.04 provides that:
 The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court.
In this case, the trial court concluded that the BZA's denial of the temporary use permit "was arbitrary and capricious as it was not supported by the preponderance of substantial, reliable or probative evidence."
Raisch requested a temporary use permit for the operation of a demolition disposal site in an A-I agricultural district. Permitted uses in an A-I agricultural district include agriculture, single-family dwellings, cemeteries, schools, colleges, churches, commercial kennels, and dairies. Moraine Codified Ordinance 1135.02. Pursuant to the Comprehensive Zoning Plan, dumping and excavation are permitted only in an M-2 District, and then only with prior approval. Moraine Codified Ordinance 1185.19(c). Moraine Codified Ordinance 1185.19(b) sets forth that "[t]he opening of any new excavation * * *, and the removal of earth for the purpose of excavating gravel * * * within 300 feet of any A-I * * * District, is hereby declared and determined to be detrimental to the health, morals, safety and general welfare of the City and such actions are hereby prohibited." Raisch did not request that its operation be treated as a non-conforming use, and no evidence was presented that the operation had ever complied with applicable zoning regulations. Although Raisch was granted a temporary use permit from 1993 until 1997 while the city of Moraine determined how to zone the newly annexed property and published the zoning code, it was clear that the permit had been granted due to the uncertainty about and the unavailability of the new zoning regulations and was not based on any determination by the BZA that the demolition disposal site was not detrimental to the health, morals, safety, and general welfare of the city, as Raisch contends. At the hearing before the BZA, Raisch attempted to show that it would suffer economic hardship if it were not allowed to continue its dumping operation. In support of this argument, Raisch asserted that "it could put the business out of business" if it had to pay to dump its demolition debris at other locations. Raisch presented scant evidence in support of this claim, however. Although June Raisch testified that other demolition companies have their own dumps, she also testified that other small contractors pay to dump in her disposal site. She gave no specific information about the cost of dumping at a disposal site owned by someone else versus the cost of operating one's own site or about how this differential would affect the company's competitiveness to support her claim that the company could not survive the closing of the demolition disposal site. There was also evidence that Raisch had received stop work orders from the city of Moraine as early as 1993 and from Jefferson Township as early as 1990, yet Raisch had apparently made no effort to relocate its operation or to develop a contingency plan to alleviate its hardship in the interim.
Based on the fact that Raisch's operation violated the zoning code and that Raisch had not presented specific evidence relating to the alleged hardship that would be precipitated by the denial of the temporary use permit, we disagree with the trial court's conclusion that the BZA's denial of the temporary use permit was unsupported by the evidence. In our view, the fact the Raisch's use of the property violated the zoning regulations established by the city was a sufficient reason, in and of itself, for the denial of the permit, especially because Raisch had been on notice since 1990, and perhaps since the establishment of the operation on this site, that the operation did not comply with the zoning regulations.
We are not unreceptive to Raisch's argument that the standard for showing unnecessary hardship for the granting of a temporary use permit should be a somewhat less exacting standard than that required for the granting of a variance because a variance runs with the land in perpetuity and a temporary use permit does not. However, Raisch's claim that it would be put out of business if it were forced to move or to close its demolition disposal site was largely unsubstantiated, and the BZA could have reasonably concluded that Raisch had failed to satisfy even a less exacting standard for showing unnecessary hardship than that required for a variance.
The trial court's primary objection to the evidence presented at the hearing was that testimony was offered by members of the public to whom a "mass public oath" was administered, that the statements offered by the members of the public, most of whom were neighbors of the Raisch operation, consisted of opinion rather than fact, and that such evidence did not rise to the level of reliable, probative, and substantial evidence. While we might agree with the trial court that the statements offered by Raisch's neighbors were entitled to little weight, we do not agree that the presence of this testimony required the reversal of the BZA's decision. The BZA mentioned the neighbors' concerns in reaching its decision, but it also provided other specific reasons for its decision, and it is not apparent that the neighbors' concerns were given great weight. We will not presume that the BZA was so unsophisticated as to have been unable to differentiate between the objective observations and the subjective opinions of the hearing participants where there was other evidence in the record to support its decision. The case relied upon by the trial court,Adelman Real Estate Co. v. Gabanic (1996), 109 Ohio App.3d 689, involved a situation in which the only evidence before the BZA was the unqualified opinion testimony of citizens at the hearing. Because we are not presented with that situation here, we conclude that the trial court erred as a matter of law when it determined that the BZA's decision was unsupported by the evidence.
The trial court stated that the BZA's decision was "arbitrary and capricious as it was not supported by the preponderance of substantial, reliable or probative evidence." R.C. 2506.04 uses these terms in the disjunctive, i.e., a trial court may reverse or modify a decision of an administrative agency if it finds that the decision was arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, or probative evidence. Because of this disjunctive language, a trial court could find that a decision was supported by the evidence but that it nonetheless suffered from one or more of the other infirmities described in the statute. It is unclear to us whether the trial court would have found the BZA's decision to be arbitrary and capricious in addition to being unsupported by the evidence, or if that conclusion was wholly premised on its finding that the evidence did not support the decision. We will thus remand this matter to the trial court for clarification of that issue.
The first assignment of error is sustained.
 II. TRIAL COURT ERRED IN REVERSING THE DECISION OF THE APPELLANT TO DENY APPELLEE'S REQUEST FOR TEMPORARY USE PERMIT WHERE THE TRIAL COURT ERRONEOUSLY PLACED THE BURDEN OF PROOF ON THE APPELLANT TO JUSTIFY ITS DECISION TO DENY APPELLEE'S REQUEST FOR A TEMPORARY USE PERMIT.
The BZA contends that the trial court improperly placed the burden of proof on the BZA rather than on Raisch, despite the court's correct statement in its decision and entry that Raisch bore the burden of proving that the BZA's decision was incorrect. This contention is based upon the trial court's comment in its decision and entry that the BZA "did not hear from any local official offering testimony as to why [Raisch's] temporary use application should not be granted or substantiating the complaints or opinions of [Raisch's] neighbors." In our view, it is not apparent from this statement that the trial court misallocated the burden of proof, especially in light of its express statement that Raisch bore the burden of proof.
The second assignment of error is overruled.
The judgment of the trial court will be reversed, and the matter will be remanded for the trial court to clarify whether it would reverse the decision of the BZA for any of the reasons specified in R.C. 2506.04 in light of our conclusion that the BZA's decision was supported by a preponderance of reliable, substantial, and probative evidence and to rule accordingly.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Ronald D. Keener
Peter C. Krier
Michael W. Sandner
Hon. David Gowdown