**PSCHESANG et al., Appellants,**

v.

**MILFORD BOARD OF ZONING APPEALS, Appellee.**

2011-Ohio-3459.]

*Court of Common Pleas of Ohio,*
*Clermont County.*

No. 2010 CVF 1362.

Decided April 22, 2011.

42

Jeff Corcoran, for appellants.

Michael Minniear, Milford Law Director, for appellee.

HADDAD, Judge.

{¶ 1} This matter came before the court on a notice of appeal, filed by the appellants, Samuel and Tammy Pschesang, on June 30, 2010. Attorney Jeff Corcoran represents the appellants, and attorney Michael Minniear represents the appellees.

{¶ 2} Pursuant to the judgment entry admitting exhibits and setting the briefing schedule, filed by the court on November 3, 2010, the matter was submitted on the briefs following the final response deadline of February 9, 2011. Subsequent to reviewing the briefs, the court scheduled oral arguments with counsel on April 5, 2011. The parties were not required to fully argue their positions at that time, but were present only to clarify certain issues raised in the briefs.

{¶ 3} The court has in its possession the transcript of the public meeting of the Milford Board of Zoning Appeals held on May 27, 2010. It also has in its possession the exhibits and documents considered by the board of zoning appeals. The record is now complete and, having taken the matter under advisement, the court renders the following decision.

### FINDINGS OF FACT

{¶ 4} This matter is before the court on an administrative appeal of the June 15, 2010 decision issued by the Milford Board of Zoning Appeals ("BZA").[1] In that decision, the BZA made the following findings of fact:

{¶ 5} The Pschesangs are the owners of property located at 65 Mound Ave., Milford, Ohio. On March 18, 2010, the Milford city zoning administrator decided that Mr. Pschesang could legally park his commercial F–Super Duty one-ton-plus truck in a garage located on that property. Amy Bassano, a resident of 69 Mound Ave., Milford, Ohio, lives in a home immediately adjacent to the property in question. She raised certain safety concerns resulting from Pschesang parking his vehicle at the property in question. Since she was "a person aggrieved or affected by the Decision of the Zoning Administrator," she appealed the zoning administrator's decision.

{¶ 6} The BZA determined that the truck in question is an F–450 SuperDuty 4x4 Crew Cab with dump-body uplift. The gross-vehicle-weight rating for the truck without the dump-body uplift is 15,000 pounds. Depending on the wheel base, the capacity for the truck is either 7,855 pounds or 7,770 pounds, but in any event, the capacity would exceed 3,000 pounds.[2] The truck is a commercial vehicle used by Pschesang in his construction business.

{¶ 7} The garage in question is located in a residential zone, appurtenant to the premises owned by Pschesang. He does not reside at the property in question. Further, the truck in question is not Pschesang's sole means of transportation, and he has a pole barn approximately 15 minutes from his property that he could use to store the vehicle.

{¶ 8} The BZA determined that the applicable regulation in this case is Milford Zoning Ordinance 1187.08(B). Section 1187.08(B) provides that "[n]o residential parking area or garage shall be utilized for more than one (1) commercial vehicle owned or normally operated by a resident of the premises and such vehicle shall not exceed one and one-half (1 ½) tons capacity." The BZA found that Pschesang was not a resident of the premises on which the garage is situated. It further determined that Pschesang is not exempt under Section 1187.04 since, pursuant to Section 1121.04, if two restrictions are in conflict, the more restrictive of the two would apply. It determined that Section 1187.08(B) was more restrictive, and thus it was applicable over Section 1187.04.

---

1. See Exhibit 31.

2. The court would note that there seems to be some dispute between the parties regarding the actual capacity of the truck. However, for purposes of this decision, the court finds that it is not necessary to address this issue.

{¶ 9} The BZA reasoned that Pschesang's parking of his truck in this residential neighborhood and on property at which he does not reside would have an "adverse effect on neighboring properties and is not in the public interest." It found that any other interpretation would be incompatible with the uses and practices within the district, and would be contrary to the principles set forth in the preamble to the Milford Zoning Ordinance. It was further determined that this would result in an unreasonable and unnecessary increase in the risk of injuries to persons, damage to property, and diminution in property values.

{¶ 10} Based upon this reasoning, the unanimous decision of the BZA was to reverse the March 18, 2010 decision of the zoning administrator. The BZA held that Pschesang's commercial vehicle was in violation of Section 1187.08(B).

## THE LEGAL STANDARD

{¶ 11} This court has jurisdiction to hear an administrative appeal of the final decision of the BZA pursuant to R.C. 2506.01. That provision provides that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located." R.C. 2506.01(A). "Within forty days after filing a notice of appeal in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the officer or body from which the appeal is taken, upon the filing of a praecipe by the appellant, shall prepare and file in the court to which the appeal is taken, a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision." R.C. 2506.02.

{¶ 12} The hearing shall proceed "as in the trial of a civil action," but the court shall be limited to the transcript filed pursuant to R.C. 2506.02 unless an exception applies. R.C. 2506.03(A). If one of the exceptions applies, then the court may consider the transcript and "additional evidence as may be introduced by any party." R.C. 2506.03(B); *Culkar v. Brooklyn Hts.*, Cuyahoga App. No. 94968, 2011-Ohio-724, 2011 WL 578637, ¶ 27; *Rowe v. Carlisle Twp. Bd. of Zoning Appeals*, Lorain App. No. 10CA009852, 2011-Ohio-395, 2011 WL 332670, ¶ 7. In this case, the transcript did not contain the exhibits admitted or proffered and considered at that hearing before the BZA. Therefore, additional evidence was offered for the court's consideration. See R.C. 2506.03(A)(1).

{¶ 13} Following the hearing, and after considering all of the evidence, "the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent

with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court." R.C. 2506.04; *Taylor v. Wayne Twp. Bd. of Trustees*, Butler App. No. CA2008-02-032, 2009-Ohio-193, 2009 WL 119848, ¶ 8; *Culkar* at ¶ 27; *Rowe* at ¶ 7. When determining an administrative appeal, the court is to presume that the decision is reasonable and valid. *Taylor* at ¶ 9. The court must determine from the whole record if there is a preponderance of reliable, probative, and substantial evidence supporting the decision, but it cannot substitute its own judgment for that of the agency. Id.

## LEGAL ANALYSIS

{¶ 14} " 'Ohio law is clear that in interpreting a zoning ordinance[,] courts must strictly construe restrictions on the use of real property in favor of the property owner.' " *Allen v. Miami Cty. Bd. of Zoning Appeals*, 186 Ohio App.3d 196, 2010-Ohio-377, 927 N.E.2d 33, ¶ 16, quoting *BP Oil Co. v. Dayton Bd. of Zoning Appeals* (1996), 109 Ohio App.3d 423, 432, 672 N.E.2d 256. All zoning decisions, whether on an administrative or judicial level, should be based on the principles that underlie real property law. Zoning restrictions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be entitled. Therefore, restrictions are construed in favor of the property owner. Restrictions on the use of real property must be strictly construed, and the scope of the restrictions cannot be construed to extend beyond limitations clearly prescribed. Ambiguities must be construed against the zoning resolution. The enforcement of such a provision is an exercise of police power that restricts property rights. Furthermore, the BZA's authority to regulate uses of land does not include the authority to restrict uses not clearly proscribed. *Allen* at ¶ 17.

{¶ 15} There is no dispute that, at this time, the applicable provisions of the zoning ordinance are contained in Chapter 1187.[3] The chapter specifically provides that the purpose of the chapter "is to prevent or alleviate the congestion of the public street, to minimize any detrimental effects of off-street parking and loading areas on adjacent properties."[4]

{¶ 16} The specific restriction applied by the BZA can be found in Section 1187.08(B), which provides as follows: "No residential parking area or garage shall be utilized for more than one (1) commercial vehicle owned or normally

---

3. See Exhibit 19.

4. Id. at Section 1187.01.

operated by a resident of the premises and such vehicle shall not exceed one and one-half (1 ½) tons capacity." In other words, Pschesang can park one commercial vehicle in his garage as long as he is a resident of the premises and the truck does not exceed one and one-half tons capacity. The city argues that (1) Pschesang is not a resident of the property in question and (2) the vehicle exceeds the limitation on capacity. There is no dispute that Pschesang owns the property, but does not reside there. The only requirement of Section 1187.08(B) that is in dispute is the capacity of the truck. For purposes of this decision, the court will not make a finding as to the capacity, but will assume that the capacity does exceed one and one-half tons.

{¶ 17} Also included within Chapter 1187 is an exemption. The exemption provides as follows: (A) "In order to avoid traffic congestion and to provide for safe circulation of motor vehicles and pedestrians, and for the protection and convenience of the general public, properties lying west of the intersection of High Street and Main Street shall be exempt from the provision of this Chapter"; and (B) "Single family dwellings and two-family dwellings are exempt from the provisions of this Chapter."[5]

{¶ 18} The appellee argued at the hearing on the matter that Pschesang is not subject to Exemption A since it was intended to apply only to residences in the northwestern corridor and not to residences in the southwestern corridor; however, the ordinance does not make this distinction. The only requirement is that the property be located west of the particular intersection; thus, it is of no consequence that Pschesang's property is located to the southwest of the intersection. The only relevant fact is that the property is west of that intersection; therefore, Exemption A would apply to Pschesang's property.

{¶ 19} Further, even if Exemption A did not apply, Pschesang's property is subject to Exemption B, since it is a single-family dwelling. There seems to be no dispute regarding this issue.

{¶ 20} However, the city of Milford argues, and the BZA determined, that Section 1187.04 is inapplicable since, pursuant to Section 1121.04, the most restrictive provision, or the provision imposing the higher standard, must govern.[6] The BZA determined that Section 1187.08(B) was more restrictive, thus the exemptions contained in Section 1187.04 do not apply. The court finds that this argument is not well taken. If the more restrictive provision always applies, an exemption would be useless and unnecessary, since it is always going to be less restrictive, given that it excludes someone or something from certain require-

5. Id. at Section 1187.04(A) and (B).

6. See Exhibit 23, at Section 1121.04.

ments. Further, the city does not argue that the exemption should not be made a part of the Zoning Ordinance, but instead argues that it was placed in an incorrect location. Thus, the court can infer that the city intended at least some portion of the ordinance to be less restrictive, which is contrary to its argument under Section 1121.04.

{¶ 21} Additionally, the court finds that Section 1121.04, as it is currently written, does not govern conflicts between individual sections contained within the zoning ordinance itself. The Milford Zoning Ordinance is *one* ordinance composed of different chapters and sections. It comprises the entire zoning law for the city of Milford.

{¶ 22} Section 1121.04 specifically provides that the zoning ordinance is considered to be "minimum requirements" for the city of Milford. The court can infer from this statement that there may be more restrictive requirements contained in a rule, regulation, ordinance, or resolution that is separate from the city's zoning laws.

{¶ 23} Section 1121.04 further provides that, should a requirement contained within the zoning ordinance conflict with the requirement of "any other" lawfully adopted rule, regulation, ordinance or resolution, then the most restrictive, or the one imposing the higher standard, should apply. Therefore, this provision expressly applies when a particular section of the Zoning Ordinance conflicts with some *other* rule, regulation, ordinance, or resolution. There is no language in Section 1121.04 stating that it governs conflicts between the individual sections of the Zoning Ordinance. By using the phrase "any other lawfully adopted rule, regulation, ordinance or resolution" and not including conflicts between "individual sections of the Zoning Ordinance," it is clear to the court that Section 1121.04 does not resolve conflicts between individual sections of the Zoning Ordinance, but instead governs conflicts with rules, regulations, ordinances, and resolutions separate from the Milford Zoning Ordinance. If the city of Milford intended that Section 1121.04 govern conflicts between the individual sections of the zoning ordinance, then that section should be amended to include that specific language.

{¶ 24} The city of Milford's final assertion is that intent should govern. It argues that the exemption was not intended to apply to the restriction at issue, but was simply contained within the wrong chapter. It cites the preamble, contained within Section 1121.01, and the "purposes" language of Chapter 1187, contained within Section 1187.01, for the proposition that the Zoning Ordinance was intended to promote the public health, safety, comfort, and welfare of the residents of the city, to protect the property rights of all individuals, and to lessen

congestion on public streets, roads, and highways.[7]  It contends that this intent cannot be satisfied if properties such as Pschesang's are exempt from the requirements of Section 1187.08(B).

{¶ 25} However, pursuant to *Allen*, the court should strictly construe the restrictions contained in the Milford Zoning Ordinance in favor of Pschesang since they are depriving him of the use of his real property.  The court cannot extend the scope of the restrictions to include limitations on the use of his property that are not clearly prescribed in the ordinance.  For this reason, any ambiguities in the ordinance must be construed against the city of Milford.  The ordinance, as it is currently written, exempts Pschesang's property from the requirements of Chapter 1187, including Section 1187.08(B).

{¶ 26} While the court understands the city's argument and the concerns of Mrs. Bassano, it must strictly construe the ordinance as currently written, which would include the exemption provided by Section 1187.04.  The court cannot, according to the law, rewrite the zoning ordinance so that it further restricts Pschesang's property rights.  The court has no choice but to apply the ordinance as it was written when Pschesang's case arose.

{¶ 27} For all of the aforementioned reasons, the court finds that, even if Pschesang might be in violation of Section 1187.08(B), he is exempt pursuant to Section 1187.04.  The court is mindful of Mrs. Bassano's safety concerns; however, under Ohio law, the court has no other choice but to find that, pursuant to the Zoning Ordinance as it is currently written, Pschesang is exempt from the restrictions contained within Chapter 1187.  Although Pschesang is entitled to park his commercial vehicle in the garage in question, the court is hopeful that he will do so in a safe manner and with the utmost caution.

## CONCLUSION

{¶ 28} Pursuant to the foregoing analysis, and having considered the competent, credible evidence, the court finds that the BZA's decision, issued June 15, 2010, is arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.  Specifically, the BZA's interpretation of the Zoning Ordinance created a greater restriction on Pschesang's property rights than if it had simply applied the ordinance as it was written.

{¶ 29} Consistent with the court's findings under R.C. 2506.04, it hereby reverses the decision of the BZA, and finds that Pschesang's *parking* of his

---

7.  See Exhibit 23, at Section 1121.01, and Exhibit 19, at Section 1187.01.

vehicle on the property in question is not in violation of the Milford Zoning Ordinance.

So ordered;
decision reversed.