[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Irvin H. Harlamert appeals from a judgment of the Montgomery County Court of Common Pleas, Civil Division, which affirmed the decision of the City of Oakwood's Planning Commission ("Planning Commission").
The pertinent facts are as follows. On September 2, 1998, the Planning Commission granted the application of Charles and Elizabeth Schroeder to divide their property into three plots of land. The westernmost plot of land that was created from this division was labeled lot number 3943 ("the lot"). At the time of the division, the Planning Commission established the front yard setback of the lot to be eighty-three feet.
In December 1998, Aaron and Karen Knoll entered into a contract to purchase the lot. Their contract was conditioned upon the Planning Commission's grant of the Knolls' application for a variance of the front yard setback. They asked for a variance to change the front yard setback to seventy-three feet on the east end of the lot, thus leaving a front yard setback that began at eighty-three feet and narrowed to seventy-three feet on the east end of the lot. On December 2, 1998, the Knolls' architect presented the Knolls' site plan to the Planning Commission and explained why the Knolls were requesting the variance. The Planning Commission approved the Knolls' application during the meeting. Their written decision approving the Knolls' application was dated December 9, 1998. On December 30, 1998, the Knolls purchased the lot from the Schroeders.
Harlamert owns property which adjoins the lot on the lot's north side. On December 11, 1998, he appealed the Planning Commission's decision to the Montgomery County Court of Common Pleas, arguing that the Planning Commission's decision was not supported by a preponderance of reliable, probative and substantial evidence.
The trial court affirmed the Planning Commission's decision on September 2, 1999. Harlamert now appeals the trial court's decision.
Harlamert advances two assignments of error on appeal. Before addressing Harlamert's arguments, we note that this case involves only Harlamert's appeal of the Planning Commission's decision made during the December 2, 1998 meeting to grant the Knolls' application for a variance to establish the front yard setback at seventy-three feet on the east side of the lot. We understand that other proceedings regarding the Planning Commission's September 2, 1998 meeting and decision to allow the subdivision of the Schroeders' former property into three lots are ongoing. The Planning Commission's September meeting and decision are not, however, the subject of this appeal.
 I. THE COMMON PLEAS COURT ERRED IN FAILING TO APPLY THE DOCTRINE OF RES JUDICATA TO THE SECOND VARIANCE APPLICATION REGARDING THE FRONT YARD SETBACK FOR OAKWOOD LOT 3943.
Harlamert argues that the trial court erred when it failed to apply the doctrine of res judicata to the Knolls' "second [v]ariance [a]pplication" regarding the front yard setback for the lot. He asserts that the owners of the lot had previously applied for a front yard setback of seventy feet and that the Planning Commission, in response to that first application, had originally set the front yard setback at eighty-three feet. Harlamert claims that three months later, the owners applied for a "second variance" regarding the same front yard setback and that the Planning Commission, in response to that second application, established the front yard setback at seventy-three feet. Harlamert argues that the trial court should have applied the doctrine of res judicata to void the Planning Commission's grant of the "second [v]ariance [a]pplication." His argument relies on Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379,653 N.E.2d 226.
The Knolls point out that Harlamert did not raise this issue during his appeal to the trial court. They urge us to not consider this issue since it was not raised below.
In response, Harlamert states as follows: 1) he did raise the issue to the Planning Commission, although he did not use the specific words "res judicata," and the trial court had the transcript from the Planning Commission meeting; 2) pursuant to Civ.R. 8(C), res judicata is an affirmative defense which must be included in the pleadings, but there were no "pleadings" in this case and thus he "could not `plead' [r]es [j]udicata"; and 3) Civ.R. 8 should not apply to this case because Chapter 2506 "does not contemplate `pleadings' in the normal sense" and Civ.R. 1(C) states that the civil rules do not apply to the extent that they would be, by their nature, clearly inapplicable.
In Harlamert's appeal to the trial court, his only assignment of error was that the Planning Commission's decision was not supported by a preponderance of reliable, probative and substantial evidence.
His first response, supra, that although he did not specifically raise the issue to the trial court, the trial court did have a transcript from the Planning Commission meeting where he did raise the issue, is not persuasive. The trial court was not under a duty to search the transcript for possible errors. It was Harlamert's responsibility to point out the alleged error, not only so the trial court could address the issue, but also to preserve the issue for appeal to this court.
Harlamert's second and third responses, supra, that he could not plead res judicata because there were no pleadings in this case and that Civ.R. 8 should not apply to this case, are also not persuasive. Although he filed a notice of appeal from the Planning Commission's decision, instead of a complaint which is traditionally used to begin proceedings in the trial court, he did file a brief to raise his assignment of error to the trial court. We understand that this case might not have involved the traditional pleadings which Civ.R. 8(C) contemplates, but Harlamert did have the opportunity to raise the issue to the trial court and should have raised it to preserve it for appeal to this court. Because he failed to raise this issue to the trial court, we conclude that he waived it.
The first assignment of error is overruled.
 II. THE COMMON PLEAS COURT ERRED IN HOLDING THAT THERE WAS SUFFICIENT EVIDENCE PRESENTED TO THE OAKWOOD PLANNING COMMISSION AS A BASIS FOR GRANTING A SECOND VARIANCE FROM THE PREVIOUSLY REQUESTED VARIANCE OF 83 FOOT FRONT YARD SETBACK TO THE SECOND REQUESTED FRONT YARD SETBACK OF 73 FEET.
Harlamert argues that the Planning Commission's hearing on December 2, 1998 was an adjudication hearing rather than a legislative hearing. He asserts that because it was an adjudication hearing, "the normal formalities of introducing evidence need[ed] to [be] followed[,] i.e.[,] oaths to witnesses, sworn testimony under oath under penalties of perjury, opportunities for cross examination, normal procedures for introduction of documentary evidence by proper identification and authentication[,]" and that because these formalities were not followed, the evidence which was taken during the meeting should not have been considered by the Planning Commission or the common pleas court. In the alternative, he argues that even if such evidence was properly considered, it was insufficient for the trial court to conclude that the Planning Commission's decision was supported by a preponderance of reliable, probative and substantial evidence.
We agree with Harlamert's argument that the Knolls' application for a variance required the Planning Commission to hold an adjudication hearing rather than a legislative hearing.In re Rocky Point Plaza Corp. (1993), 86 Ohio App.3d 486, 491,621 N.E.2d 566, 569.
An adjudication hearing is open to the public, but is not a public hearing. Id. In other words, an adjudication hearing is not subject to public comment, "but, instead, involve[s] the determination of rights of specific persons and whether such rights should be granted based upon evidence (not public opinion) presented at the hearing." (Emphasis added.) Id. at 491-492,621 N.E.2d at 569.
Harlamert argues that the evidence which was presented to the Planning Commission at the December 2, 1998 meeting should not have been considered by the trial court because the witnesses' testimonies were not given under oath, the witnesses were not subject to cross examination, and the documentary evidence was not properly authenticated. He asserts that because such evidence should not have been considered, the trial court erred in concluding that the Planning Commission's decision was supported by a preponderance of reliable, probative and substantial evidence.
Where no objection is raised to the omission of the oath to a witness, the error is considered to be waived. Stores Realty Co.v. Cleveland (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629, 630. Harlamert argues that he did not waive this error because his attorney raised the issue twice during the September 2, 1998 meeting. As we stated, supra, however, the September 2, 1998 meeting is not in question in this appeal. The Planning Commission's September meeting and decision involved the subdivision of the Schroeders' property into three lots; it did not involve the Planning Commission's December decision which is the subject of this appeal. Harlamert also asserts that he did not waive this error because he raised it to the Planning Commission during the December 2, 1998 meeting when he reminded the Planning Commission that his attorney had given them a list of the variance criteria as established by the Supreme Court of Ohio. We conclude that such statement was not sufficient to raise Harlamert's objection to the Planning Commission's failure to place the witnesses under oath before they testified. Thus, we conclude that Harlamert effectively waived his right to appeal the Planning Commission's decision on the ground that the witnesses did not testify under oath.
We also note that R.C. 2506.03 specifically provides a remedy in the trial court for Harlamert's alleged errors. As the Knolls point out, R.C. 2506.03(A)(3) allows an appellant in an administrative appeal to file an affidavit to request that additional evidence be taken by the trial court when the testimony at the administrative hearing was not given under oath. Harlamert did not file an affidavit with the common pleas court to request that additional evidence be taken and thus failed to take advantage of R.C. 2506.03 and its ability to cure the evidentiary defects that occurred at the Planning Commission meeting.
In response, Harlamert asserts that "[i]t would be nonsense and stupid [for him] to reach out and help the [Knolls] out of their predicament by asking for an evidentiary hearing in the [c]ommon [p]leas [c]ourt."
In order to obtain their requested area variance, the Knolls had the burden to prove to the Planning Commission that they had encountered practical difficulties in the use of their property.Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 465 N.E.2d 848, syllabus. After the Planning Commission made its decision granting the Knolls' application for a variance, Harlamert appealed to the common pleas court. In an administrative appeal, "the common pleas court must act under a presumption that the determination of the [Planning Commission was] valid." BP Oil Co.v. Dayton Bd. of Zoning Appeals (1996), 109 Ohio App.3d 423, 428,672 N.E.2d 256, 259, discretionary appeal not allowed (1996),76 Ohio St.3d 1433, 667 N.E.2d 984. "The burden of overcoming this presumption and showing invalidity rests upon the party opposing the determination." Id. Thus, Harlamert had the burden in the administrative appeal to prove that the Planning Commission's decision was not supported by a preponderance of reliable, probative and substantial evidence.
Although we believe that Harlamert's failure to take advantage of R.C. 2506.03 likely waived his right to appeal the Planning Commission's decision on the ground that the evidence which was taken was defective because there was no cross examination of witnesses and the documents were not authenticated, we need not decide this issue, because Harlamert failed to raise this argument during his appeal to the common pleas court and thus waived his right to raise it on appeal to this court.
In the alternative to his argument supra, Harlamert argues that even if one considers the evidence which was presented at the Planning Commission's December 2, 1998 meeting, such evidence was not sufficient to support the Planning Commission's decision to grant the Knolls' application for a variance.
"A court of common pleas should not substitute its judgment for that of an administrative board, such as the [Planning Commission], unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." Kisil, 12 Ohio St.3d at 34,465 N.E.2d at 852; see R.C. 2506.04. In determining whether the standard of review was correctly applied by the court of common pleas, the court of appeals has a limited function. Id., quotingDudukovich v. Lorain Metro. Housing Authority (1979), 58 Ohio St.2d 202,207, 389 N.E.2d 1113, 1117. We must affirm the court of common pleas, unless we find, "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." (Emphasis added.) Id. Thus, we "review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "Within the ambit of `questions of law' for [our] review would be abuse of discretion by the common pleas court." Id. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137,566 N.E.2d 1181, 1184 (quotation omitted).
"The standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties." Kisil, supra, at syllabus.
 The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.
Duncan v. Middlefield (1986), 23 Ohio St.3d 83, 491 N.E.2d 692, syllabus, certiorari denied (1986), 479 U.S. 986, 107 S.Ct. 576. We note that "no single factor controls in a determination of practical difficulties." Id. at 86, 491 N.E.2d at 695. For example, "[a] property owner [will] not [be] denied the opportunity to establish practical difficulties * * * simply because he purchased the property with knowledge of the zoning restrictions." Id. Thus, the court must make its determination after balancing and weighing the evidence applicable to all of the factors.
The minutes from the Planning Commission's December 2, 1998 meeting state as follows:
 [B]ased upon the information presented to it[,] the Planning Commission hereby makes the following findings of fact which have been met.
 1. Because of the particular physical surroundings, shape or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from a mere inconvenience, if the strict letter of the regulations were to be carried out.
 2. The conditions upon which a petition for variance [are] based are unique to the property for which the variance is sought and are not applicable, generally, to other property within the same zoning classification.
 3. The purpose of the variance is not based primarily upon a desire to make more money out of the property.
 4. The alleged difficulty or hardship is caused by this Zoning Ordinance and has not been created by any person presently having an interest in the property.
 5. The granting of the variance will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.
 6. The proposed variance will not impair an adequate supply of light or air to adjacent property nor will it substantially increase congestion of the public streets, the danger of fire, or danger to persons or property nor will it create unreasonable noise, create a substantially adverse aesthetic appearance, or substantially diminish or impair property values within the neighborhood.
These findings of fact were made pursuant to the City of Oakwood's requirements for granting variances, as set forth by its Zoning Code. Although such requirements are not identical to the Duncan factors, they are within the essential spirit of those factors. In light of its findings, the Planning Commission granted the Knolls' application for a variance.
In its decision affirming the Planning Commission's decision, the trial court stated as follows:
 A review of the record before this Court reveals that sufficient evidence was presented to the Planning Commission for it to determine that practical difficulties existed and that the area variance was warranted. The record establishes that the required front yard setback in the R-1 District, in which [the lot] is located, is only [seventy] feet. The site plans presented to the Planning Commission reveal that [the Knolls'] proposed home will only extend past the [eighty-three] foot setback line in three areas on the east side of the property (the side "away" from [Harlamert's] property). Further, the plans and the testimony at the hearing establish that the lot is an unusually curved or "pie shape" lot. Finally, the record indicates that, when [the lot] was originally created, the Planning Commission set the rear setback line at the required [sixty] feet, so as to protect the privacy of [Harlamert's] abutting property, and that the front and rear setbacks, in combination with the unusual shape of the lot, presented a very difficult building envelope in which to work.
 Although the record reveals that [Harlamert] presented many arguments to the Planning Commission, the only evidence that he presented * * * was pictures of the neighborhood and a plan that his engineer devised to build a house within the building envelope.
 * * * [T]his Court must give due deference to the Planning Commission's resolution of evidentiary conflicts. * * * A review of the record reveals that, after weighing the evidence, the Planning Commission concluded that practical difficulties existed. Upon reviewing the evidence, this Court finds that the Planning Commission's findings of fact and final decision are supported by a preponderance of the evidence. Further, this Court finds that the evidence presented establishes the existence of practical difficulties justifying the area variance.
Before beginning our discussion of the evidence relating to the Duncan factors, we note that the Planning Commission meeting was not conducted in the format of a trial, but instead proceeded more as a discussion among the following: the Planning Committee members; Mr. Bohman, the Knolls' architect; Mr. Cross, the Schroeders' attorney; and Harlamert. Further, no electronic recording of the meeting was made and no court reporter was present. The clerk of council for the Planning Commission did, however, take minutes during the meeting. As we stated, supra, Harlamert was present at the meeting and did not object to the format used by the Planning Commission and thus waived his right to later object to such format. A map depicting the proposed house situated on the lot and the existing and requested front setbacks was also presented by Mr. Bohman. The minutes reflect that the Planning Commission members were familiar with the size, shape, and location of the lot. The minutes further reflect that there was extensive discussion about the Knolls' request before the unanimous vote in favor of granting the variance was taken. Because the Planning Commission considered the particular facts and circumstances surrounding this lot in a conscientious manner, the trial court properly gave deference to the Planning Commission's assessment of the applicability of its criteria to the lot.
Regarding the first Duncan factor, whether the property will yield a reasonable return or whether there could be any beneficial use of the property without the variance, the evidence showed that the lot was in an unusual pie shape. When asked by a Planning Commission member whether the home could be built within the eighty-three foot front setback, Bohman responded, "[N]ot really[.]"
Regarding the second Duncan factor, whether the requested variance was substantial, the evidence established that only two sections of the proposed house would protrude past the original eighty-three foot front setback. These sections included small portions of the dining room and the garage on the east side of the front of the house. Further, the Knolls' request was to vary the east side of the front setback only; the other side of the front setback was to begin at eighty-three feet. Thus, although a ten foot front variance on the east side of the lot was requested, the variance was necessary only to accommodate two small sections of the house; the remainder of the house was located behind the eighty-three foot front setback.
Regarding the third Duncan factor, whether the variance would substantially alter the essential character of the neighborhood or whether adjoining properties would suffer a substantial detriment as a result of the requested variance, the evidence established that the proposed house had been situated on the lot at an angle to blend with the street. The proposed house was to be one story and a member of the Planning Commission pointed out that another one story home was located "across the street." The rear setback of the lot had been established at sixty feet, in an effort to preserve the sanctity of Harlamert's property. At least two of the Planning Commission members believed that the proposed house was "a good architectural style for the lot." Another Planning Commission member had "no problem" with a seventy-three foot front setback because of the other front setbacks on the lot's street. Further, the neighbors to the east of the lot had not voiced an objection to the Knolls' requested variance.
There was no evidence presented regarding the fourth Duncan
factor of whether the variance would adversely affect the delivery of governmental services. Based upon the record, it appears that this was not a concern.
There was no evidence presented regarding the fifth Duncan
factor of whether the property owners purchased the lot with knowledge of the zoning restriction. At the time of the Planning Commission's meeting, however, the Knolls had not purchased the lot. Their contract with the Schroeders was dependent upon the Planning Commission's grant of their application for a variance.
Regarding the sixth Duncan factor, whether the property owners' predicament could feasibly be obviated through some other method, as we stated supra, Bohman stated that the house could "not really" be built within the eighty-three foot front setback and that even if the proposed house was shifted five feet to the east, a seventy-three foot front setback would still be necessary. Further, the lot was unusual with its pie shape.
Regarding the seventh Duncan factor, whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance, the evidence established that the lot was located in an R-1 zoning district, where the required front setback is seventy feet. The front setback of the lot had been set by the Planning Commission at eighty-three feet, beyond the requirements of an R-1 zoning district. Thus, the spirit and intent of the zoning requirement was not violated when the Planning Commission's grant of the Knolls' application resulted in a front setback that was still greater than the front setback requirement of the zoning district in which the lot was located.
In balancing this evidence, as required by Duncan, we cannot conclude that the trial court abused its discretion in finding that a preponderance of reliable, probative and substantial evidence supported the Planning Commission's decision. Harlamert's argument is not persuasive.
The Knolls request that we award them reasonable attorney fees because "there [was] no basis in law or fact" for Harlamert's appeal. App.R. 23 states:
 If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs.
We do not believe that Harlamert's appeal was frivolous. Thus, the Knolls' request for attorney fees will be denied.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.