JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, Fred Boukzam ("Boukzam"), Pon 380, Inc., Pon 195, Inc., Pon 402, Inc., Pon 584, Inc., Pon 775, Inc., and Pon Management, Inc. (collectively "appellants"), appeal the trial court's granting of summary judgment in favor of plaintiff-appellee, Merchants Advance, LLC ("Merchants Advance"). For the reasons set forth below, we affirm.
 {¶ 2} In 2001, Boukzam purchased the northeast Ohio license for Ponderosa Steakhouse restaurants from Metromedia Restaurant Services, Inc. ("Metromedia"). Boukzam completed this purchase through Fast Family Casual ("FFC"), which owns assets of the restaurants, and Steak and Buffet, Inc. ("Steak and Buffet"), which holds the franchise rights. Boukzam owns and operates both of these companies.
 {¶ 3} Immediately upon Boukzam's purchase of the franchise rights from Metromedia, on April 4, 2002, FFC entered into a Capital Lease and Management Agreement with Reece, his wife, and their companies, Powerhouse 380 Inc., Powerhouse 268 Inc., and Powerhouse Restaurant Group, Inc. (collectively "Reece"). Pursuant to the Agreement, which was retrospectively effective on September 24, 2001, Reece rented the real property and restaurant equipment for six Ponderosa Steakhouse restaurants from FFC. Furthermore, Reece controlled and operated all aspects of the restaurants, and paid FFC a management fee. Although Reece operated the restaurants, Boukzam, through FFC and Steak and Buffet, remained legal owner as he owned the land, equipment and franchise rights. *Page 2 
 {¶ 4} Merchants Advance provides merchant account financing services to restaurants and other businesses. More specifically, Merchants Advance enters into agreements to provide immediate cash flow to businesses in need of working capital. In turn, the businesses agree to sell their future credit card receivables from their customers at a discount rate and then allow Merchants Advance to take a percentage of their future credit card processing transactions until Merchants Advance has collected from the business the agreed amount of the purchased credit card receivables.
 {¶ 5} In early 2005, Merchants Advance contacted Boukzam seeking to obtain his business. Boukzam was not interested but referred Merchants Advance to Reece and provided his contact information.
 {¶ 6} In 2005, Merchants Advance contacted Reece per Boukzam's suggestion regarding purchasing future credit card receipts from his six Ponderosa companies. On July 1, 2005, Reece completed and signed applications for selling the receipts to Merchants Advance. Pursuant to the agreement, Merchants Advance provided Reece with $242,000 in funding to the six restaurants in exchange for $350,000 worth of the restaurants' future credit card transactions. Reece used the money obtained from Merchants Advance to fund the business operations of these restaurants. *Page 3 
 {¶ 7} On or about August 30, 2005, about five days after Merchants Advance completed the final cash advance to Reece, Boukzam terminated the agreement he executed with Reece. Shortly thereafter, Boukzam created the Pon companies which leased and operated the six Ponderosa restaurants previously operated by Reece. Boukzam is the owner and operator of the Pon companies. Finally, Boukzam[1] appointed Reece as chief operating officer of Pon Management, which owns and operates the six Ponderosa restaurants previously owned by Reece.
 {¶ 8} After Boukzam acquired the operations, the six restaurants stopped forwarding their credit card receivables to Merchants Advance. At that time, *Page 4 
Merchants Advance had only received $92,351.84 of its original $242,000 cash advance.
 {¶ 9} In October 2005, Thomas Reilley, the director of credit card and underwriting for Merchants Advance, contacted Boukzam regarding the credit card receivables. Boukzam engaged in discussions regarding the receivables to determine whether the two could agree on a way to resolve the situation. After those discussions proved fruitless, Merchants Advance instituted a lawsuit.
 {¶ 10} On November 23, 2005, Merchants Advance instituted this action against appellants, Metromedia, Reece and his companies. In the action, Merchants Advance sought recovery of the unpaid balance due from the credit card receivables from appellants and their aforementioned co-defendants.
 {¶ 11} On January 29, 2007, Merchants Advance voluntarily dismissed Metromedia from the action. Merchants Advance also dismissed Reece and his Powerhouse companies from the action on March 1, 2007. As a result, the counts against the dismissed defendants were rendered moot and only count three, unjust enrichment, remained pending against appellants.
 {¶ 12} On February 22, 2007, Merchants Advance filed its motion for summary judgment against appellants. Appellants responded to the motion and moved to strike depositions, discovery responses, e-mails, and portions of Thomas Reilley's affidavit that were attached as exhibits to Merchants Advance's motion. *Page 5 
 {¶ 13} On July 12, 2007, the trial court denied appellants' motion to strike the exhibits. The following day, the trial court granted Merchants Advance's motion for summary judgment and entered judgment against appellants in the amount of $149,648.16 with post-judgment interest.
 {¶ 14} Appellants now appeal and assert two assignments of error for our review. Appellants' first assignment of error states:
 {¶ 15} "The trial court erred in granting summary judgment to Merchants Advance LLC because whether Mr. Boukzam and the Pon companies were conferred a benefit by Merchants Advance LLC remains a genuine issue of material fact."
 {¶ 16} Initially, we note that we reject Merchants Advance's argument that we need not address the merits of this assignment of error because the propositions asserted therein allege nothing more than harmless error. Merchants Advance argues that because the trial court granted summary judgment also on the fraudulent transfer claim, pursuant to Civ. R. 61, any error with respect to the unjust enrichment claim neither prejudiced appellants nor affected their substantial rights.
 {¶ 17} Merchants Advance moved for summary judgment on theories of unjust enrichment, as alleged in count three, and fraudulent transfer, as alleged in count six of the complaint. The trial court granted Merchants Advance's motion without specifically indicating the grounds on which it awarded summary judgment. *Page 6 
Merchants Advance maintains that the trial court's silence indicates it granted summary judgment on both the unjust enrichment and the fraudulent transfer claims. We, however, disagree and find that the fraudulent transfer claim contained in count six of the complaint was dismissed on March 1, 2007 when Reece and his companies were dismissed from the action. Count six only applied to Reece and his companies and did not apply to appellants.
 {¶ 18} R.C. 1336.04(A), the statute governing fraudulent transfers, is written in terms of the debtor's conduct and not the person in receipt of the transfer. Accordingly, the fraudulent transfer claim asserted in count six was not applicable to appellants, whom Merchants Advance claims in the complaint had merely received the money and was not the debtor. Therefore, we find that, although Merchants Advance asserted the fraudulent transfer claim in its motion for summary judgment, the trial court did not grant summary judgment as to this claim because the claim was dismissed when Reece and his companies were dismissed from the action.
 {¶ 19} Having determined that the trial court did not grant Merchants Advance summary judgment as to a fraudulent transfer claim, we find their argument, based upon Civ. R. 61 without merit. Consequently, we next address the merits of appellants' appeal.
 {¶ 20} In their first assignment of error, appellants assert that the trial court erred in granting Merchants Advance summary judgment because the evidence *Page 7 
establishes that a genuine issue of material fact remains regarding whether Merchants Advance conferred a benefit upon appellants.
 {¶ 21} With regard to procedure, we note that we employ a de novo review in determining whether summary judgment was properly granted.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equip. Co. (1997),124 Ohio App.3d 581, 585, 706 N.E.2d 860.
 {¶ 22} Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." Civ. R. 56(C); State ex rel. Dussell v. Lakewood PoliceDept., 99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, 791 N.E.2d 45, citingState ex rel. Duganitz v. Ohio Adult Parole Auth., 77 Ohio St.3d 190,191, 1996-Ohio-326, 672 N.E.2d 654.
 {¶ 23} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Zivich v. Mentor SoccerClub, 82 Ohio St.3d 367, 369-870, 1998-Ohio-389, 696 N.E.2d 201. Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but *Page 8 
the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 24} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Merchants Advance's favor was appropriate.
 {¶ 25} In Guardian Technology, Inc. v. Chelm Properties, Inc., Cuyahoga App. No. 80166, 2002-Ohio-4893, this court discussed in depth the law regarding unjust enrichment. In so doing, the court stated:
 {¶ 26} "Generally speaking, a claim for unjust enrichment lies whenever a benefit is conferred by a plaintiff upon a defendant with knowledge by the defendant of the benefit and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." A claim for unjust enrichment does not arise out of an actual contract but out of a contract implied in law, i.e. quasi-contract.
 {¶ 27} Id., quoting Donovan v. Omega World Travel, Inc. (Oct. 5, 1995), Cuyahoga App. No. 68251.
 {¶ 28} The court further provided: *Page 9 
 {¶ 29} "Quasi-contract developed from the desire of the law to bring about justice without any reference to the intention of the parties, and sometimes contrary to their intention. The principle upon which they are founded is prevention of unjust enrichment, and the remedy provided is by an action as though it were upon a contract.
 {¶ 30} "A quasi-contract is a legal fiction that does not rest upon the intention of the parties, but rather on equitable principles in order to provide a remedy. ***"
 {¶ 31} Id., quoting Novomont Corp. v. The Lincoln Elec. Co. (Nov. 1, 2001), Cuyahoga App. No. 78389.
 {¶ 32} Based upon the foregoing principles, it is well-established that the application of an unjust enrichment action does not mandate privity between the parties. Pioneer Bank v. Flynn (Sept. 9, 1981), Butler App. No. CA79-04-0039. Thus, a third party that is not a party to a contract but still benefits from that contract may be held liable for unjust enrichment. Id.
 {¶ 33} In their appeal, appellants only assert that genuine issues of material fact exist in regards to the first element of unjust enrichment, i.e., whether a benefit was conferred by Merchants Advance on appellants. Appellants argue that while Reece and his companies received the $242,000 from Merchants Advance, appellants did not receive any funds when they took over the operations of the six Ponderosa restaurants. We find appellants' argument without merit. *Page 10 
 {¶ 34} Merchants Advance conferred a benefit upon appellants when it provided funds for the operation of their restaurants. There is no dispute that Merchants Advance provided $242,000 to Reece and that Merchants Advance provided those funds in exchange for credit card receivables it never received. The undisputed facts further demonstrate that the $242,000 was used to fund the business operations of the restaurants now owned and operated by appellants. Reece, in his answer to an interrogatory inquiring into what he did with the funds he received from Merchants Advance, stated in pertinent part: "[T]he loan proceeds were deposited into a bank account at Dover-Phila Credit Union. Subsequently, the funds were transferred to an account at First Merit Bank, N.A. The monies were then used to fund the business operations forthe six Ponderosa restaurants." (Emphasis added.)
 {¶ 35} Appellants took over the operations of the six Ponderosa establishments within days of Reece receiving the final installment of $30,000 from Merchants Advance. Around that time, appellants also hired Reece to be the chief operating officer for Pon Management, the company that owns and operates the same six Ponderosa restaurants recently taken from Reece. Boukzam, being the owner and operator of both FFC and the Pon companies clearly knew of the funding from Merchants Advance. Considering the circumstances, it is clear that appellants clearly benefitted when the monies provided by Merchants Advance was used to fund the business operations of the Ponderosa restaurants appellants acquired *Page 11 
within days of the final installment. Accordingly, we find appellants' argument in this regard without merit. No genuine issue of material fact exists as to whether Merchants Advance conferred a benefit upon appellants.
 {¶ 36} As to the other elements of unjust enrichment, appellants provide no evidence in opposition to Merchants Advance's assertions, and the evidence provided in support of that assertion, that appellants knew of the benefit and that retention of the benefit under the circumstances would be unjust without payment. There is no dispute that Boukzam referred Merchants to Reece, that he knew Reece had an agreement with Merchants, that he knew Reece had received the $242,000 and used it to fund the business operations of the restaurants, that he knew that Reece had failed to sell Merchants Advance $350,000 worth of credit card receipts as stipulated in their agreement, and that he, through newly created companies, took over operations of the six restaurants within days of Reece receiving the last payment from Merchants. It has also been established that Boukzam hired Reece to be the chief operating officer of Pon Management, the company that owns and operates the six Ponderosa restaurants acquired from Reece. This evidence clearly establishes that Boukzam knew of the benefit.
 {¶ 37} Furthermore, the evidence demonstrates that retention of the money received would be unjust should appellants not refund the amount. Considering the aforementioned evidence, it is apparent that Boukzam was involved in some way in *Page 12 
nearly every aspect of the Merchants Advance and Reece transactions. Accordingly, we affirm the trial court's grant of summary judgment in favor of Merchants Advance on its claim of unjust enrichment.
 {¶ 38} Appellants' second assignment of error states:
 {¶ 39} "The trial court abused its discretion under Evidence Rule 408 by admitting evidence of settlement discussions between Merchants Advance LLC and Mr. Boukzam."
 {¶ 40} Within this assignment of error, appellants argue that the trial court improperly admitted the following averments in the affidavit of Thomas Reilley, which was evidence of settlement negotiations between Boukzam and Reilly:
 {¶ 41} "11. In or around mid-October 2005, I talked to Reece about the restaurants failure to forward the credit card batches to Merchants advance. Reece informed me that Boukzam had taken over operation of the six restaurants, and had reprogrammed the point-of-sale computers in those restaurants so that they stopped processing the credit card batches for the benefit of Merchants Advance."
 {¶ 42} "12. Thereafter, I called Boukzam to remind him that the cash advances that Merchants Advance had provided had been used to pay the operating expenses of his restaurants, and to find out how Boukzam intended to allow Merchants Advance to collect the receivables it had purchased. During this telephone call, Boukzam acknowledged the restaurants' obligation and told me his new companies *Page 13 
would take care of payment. Since Boukzam indicated he wanted to resolve the situation, we discussed entering into a new cash advance agreement with Boukzam's 14 restaurants."
 {¶ 43} "13. Also during this call, I told Boukzam that Merchants Advance would need a cash payment directly from him in the interim until the new cash advance agreement could be completed. Boukzam agreed to send Merchants Advance a check for $2,000 to satisfy the restaurants' obligations to Merchants Advance until the new cash advance agreement could be concluded. Attached to this Motion as Exhibit J is a true and accurate copy of the check received from Boukzam on or about October 26, 2005."
 {¶ 44} "14. On October 27, 2005, I received an email from Boukzam in response to my previous email to him stressing the importance of quickly completing the new advance and asking for additional information to complete the agreement. The October 27, 2005 email reiterated Boukzam's desire to enter into a new cash advance agreement with Merchants Advance, and outlined the history of his relationship with Reece. A true and accurate copy of the October 27, 2005 email from Boukzam is attached to this Motion as Exhibit K."
 {¶ 45} "15. From October 27, 2005 to November 2, 2005, I attempted to contact Boukzam on several occasions to discuss the new cash advance agreement with him. Boukzam never returned my telephone calls." *Page 14 
 {¶ 46} "16. On November 2, 2005, I sent an email to Boukzam, in one final effort to resolve this matter and complete the new cash advance agreement. A true and accurate copy of my November 2, 2005 email is attached to this Motion as Exhibit L. Boukzam did not respond to my November 2, 2005 email."
 {¶ 47} Appellants argue that these averments, along with the exhibits referenced therein, were inadmissible pursuant to Evid. R. 408. Without addressing the issue of whether the aforementioned averments and exhibits were evidence of settlement negotiations and thus inadmissible, we nevertheless, would find any alleged error in admitting said evidence, at worst, harmless error.
 {¶ 48} Given the ample evidence concerning the claim for unjust enrichment other than the alleged settlement negotiations, error in the admission of the aforementioned evidence cannot be viewed as affecting the substantial rights of the parties, and is harmless pursuant to Civ. R. 61.
 {¶ 49} "[E]ven if a trial court errs in admitting evidence, such error provides a basis for reversal on appeal only upon a demonstration that its admission affected a substantial right or was inconsistent with substantial justice. Civ. R. 61; Cincinnati v. Banks (2001),143 Ohio App.3d 272, 290, 757 N.E.2d 1205; Ballash v. Ohio Dept. of Trans. (Feb. 19, 2002), Franklin App. No. 01AP-668. Such error is considered harmless if it can be said that, in the absence of the error, the `trier of the facts would probably have made the same decision.' Hallworth v. RepublicSteel Corp. (1950), *Page 15 153 Ohio St. 349, 91 N.E.2d 690, paragraph three of the syllabus; [Craig v. Woodruff (2000), 140 Ohio App.3d 596, 599-600,748 N.E.2d 592.]" Crum v. Walters, No. 02AP-818, 2003-Ohio-1789; see, also, In reLink, Athens App. Nos. 05CA23, 05CA24, 05CA25, 2006-Ohio-529; BP Oil Co.v. Dayton Bd. of Zoning Appeals (1996), 109 Ohio App.3d 423, 436,672 N.E.2d 256.
 {¶ 50} Our review of the record reveals that the evidence supports the trial court's decision to grant Merchants Advance summary judgment on their unjust enrichment claim even without Reilley's averments or the exhibits. As we established in appellants' first assignment of error, the undisputed evidence, absent the averments and exhibits, establishes that Merchants Advance conferred a benefit upon appellants, that appellants knew of the benefit and that retention of the benefit would be unjust without payment. Accordingly, any alleged error in admitting the challenged evidence constituted harmless error. Appellants' second assignment of error is without merit. *Page 16 
Judgment affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, JUDGE
JAMES J. SWEENEY, A.J., CONCURS.
MARY J. BOYLE, J., DISSENTS. (SEE ATTACHED OPINION)
[1] Appellant, Fred Boukzam, maintains that he did not, in his personal or individual capacity, manage or operate the Ponderosa restaurants involved in this matter, nor has he, in his individual capacity, acted in any manner related to John Reece or the entities with whom Merchants contracted. Boukzam, however, has failed to properly challenge his inclusion in this case in the lower court. He cannot now assert on appeal he is not properly a party to this action. Accordingly, his argument in this regard is without merit.